IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL EDWARD DAVERN,** | **CASE NO. 1:15-cv-00162-CCC-GBC** |
| | |
| | **(CHIEF JUDGE CONNER)** |
| **Plaintiff,** | |
| | **MAGISTRATE JUDGE COHN** |
| **v.** | |
| | **REPORT AND** |
| **CAROLYN W. COLVIN,** | **RECOMMENDATION TO DENY** |
| **COMMISSIONER OF SOCIAL** | **PLAINTIFF'S APPEAL** |
| **SECURITY,** | |
| | |
| **Defendant.** | **Doc. 1, 10, 11, 12, 16, 18** |

# REPORT AND RECOMMENDATION

## I.   Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Defendant") denying the application of Michael Edward Davern ("Plaintiff") for disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433 (the "Act"), and Social Security Regulations, 20 C.F.R. §§404 *et seq*. (the "Regulations").

In 2007 and 2008, during the relevant period, Plaintiff's orthopedic surgeon and a state agency physician opined that he could perform a range of light work. After the relevant period, Plaintiff's primary care physician retrospectively opined that Plaintiff could not meet the sitting, standing, walking, or attendance requirements of any work. The administrative law judge ("ALJ") relied on the opinions from Plaintiff's orthopedic

surgeon and state agency physician to find that Plaintiff could not return to his past work as a truck driver, but could perform other light work in the national economy.

Plaintiff asserts that the ALJ was not entitled to rely on the opinions from his orthopedic surgeon or state agency physician because his condition worsened after September 2008 but before his date last insured of December 31, 2009. Plaintiff cites to two medical records from March and July of 2009 indicating a sudden onset of lumbar spine back spasms and possible annular tear. However, the only other evidence of treatment prior to December 31, 2009 was a "routine visit" with his primary care doctor in December of 2009. The only records of treatment in 2010 are three primary care visits. In contrast, in 2011, he reported a worsening of symptoms; X-rays indicated that a screw from Plaintiff's surgery had broken; and Plaintiff treated with specialists, underwent physical therapy, and had a series of epidural steroid injections. This suggests that if Plaintiff's condition did worsen to the extent that the ALJ could not rely on the opinions from 2007 or 2008, the worsening did not occur before December 31, 2009. Additionally, the retrospective opinion authored by his primary care doctor was not from a specialist, it was largely based on Plaintiff's subjective complaints, and it was extreme. For instance, the primary care doctor opined that Plaintiff could stand for "zero" minutes a time. Plaintiff never exhibited abnormal gait and repeatedly indicated he could stand for at least ten minutes at a time.

Under the deferential substantial evidence standard of review, the Court must uphold reasonable findings by the ALJ. Here, the ALJ's denial was supported by a treating source medical opinion and a state agency medical opinion. Plaintiff's conservative treatment in 2009 and 2010 indicates that Plaintiff's condition did not worsen so significantly after these opinions that relying on them was unreasonable. The March and July 2009 records identified by Plaintiff fail to demonstrate that no reasonable person would find the relevant evidence as adequate to deny benefits. For the foregoing reasons, the Court recommends that Plaintiff's appeal be denied, the decision of the Commissioner be affirmed, and the case closed.

## II.    Procedural Background

On June 9, 2008, Plaintiff filed an application for DIB. (Tr. 117-18). On September 10, 2008, the Bureau of Disability Determination denied this application, (Tr. 58-59) and Plaintiff requested a hearing.  (Tr. 61-62). On July 20, 2010, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—appeared and testified. (Tr. 22-57). On July 30, 2010, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 8-21). Plaintiff requested review with the Appeals Council (Tr. 7), which the Appeals Council denied on April 18, 2011, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-6). On September 7, 2012, the District Court remanded the case to the ALJ because the ALJ failed to elicit vocational expert ("VE") testimony at the first hearing. (Tr. 428-37). On May 28, 2013, the ALJ held a

hearing at which Plaintiff—who was represented by an attorney—appeared and testified. (Tr. 399-409). On September 5, 2013, the ALJ held a hearing at which a VE appeared and testified. (Tr. 410-27). On October 21, 2013, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 386-98). Plaintiff requested review with the Appeals Council (Tr. 371-85), which the Appeals Council denied on December 1, 2014, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 365-70). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On January 23, 2015, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On April 10, 2015, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 10, 11). On May 13, 2015, Plaintiff filed a brief in support of the appeal ("Pl. Brief"). (Doc. 12). On July 14, 2015, Defendant filed a brief in response ("Def. Brief"). (Doc. 16). Plaintiff declined to file a reply. (Doc. 18). On June 29, 2015, the case was referred to the undersigned Magistrate Judge. The matter is now ripe for review.

### III.    Standard of Review

When reviewing the denial of DIB, the Court must determine whether substantial evidence supports the denial. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but

rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." J*esurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

## IV.    Sequential Evaluation Process

To receive DIB, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. See 20 C.F.R. § 404.1520. If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not

proceed. *Id.* The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §§ 404.1520. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. See 42 U.S.C. § 423(d)(5)(A). Specifically, the Act provides that:

> An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be

furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A).

## V.   Relevant Facts in the Record

Plaintiff was born on December 1, 1961, and was classified by the Regulations as a younger individual throughout the relevant period. (Tr. 16); 20 C.F.R. § 404.1563. Plaintiff "was a truck driver for approximately 20 years." (Tr. 330). Plaintiff earned between $31,557.64 and $54,221.69 each year from 1989 to 2003. (Tr. 577). He earned $4,921.79 in 2004, $166.16 in 2005, and nothing thereafter. (Tr. 577). In November of 2007, Plaintiff settled a workers' compensation claim with his former employer for $160,000.00 for work injuries sustained on July 14, 2003 and November 25, 2002, which was a medical only claim. (Tr. 107-08, 114). He reported that he hurt his lower back "lifting something really heavy." (Tr. 329).  Plaintiff agreed that his employer would not be responsible for subsequent medical costs. (Tr. 113). Plaintiff asserts that he began decreasing his hours at work on July 14, 2003 and "went on light duty." (Tr. 132-33). He asserts that he stopped working on May 1, 2004 because his "company went out of business and they put [him] on temporary total disability." (Tr. 28, 132, 337). At that time, he had three children aged eight, seventeen, and eighteen. (Tr. 30). His wife worked

outside the home. (Tr. 281). Plaintiff earned enough income to be insured[1] through December 31, 2009. (Tr. 16).

On January 20, 2004, Plaintiff established care with orthopedic surgeon Dr. Laurence Schenk, M.D. (Tr. 306). Dr. Schenk noted that Plaintiff was injured at work "when he was carrying heavy objects" and had been "out of work now for the last seven months." (Tr. 306). Dr. Schenk treated him with injections and pain medication. (Tr. 306). In February of 2004, Plaintiff indicated that he was on "light duty" at work, and Dr. Schenk noted that Plaintiff "can lift 30 lb. He cannot stand for more than about 10 or 15 minutes. He cannot sit for more than about one hour." (Tr. 304). In May of 2004, Dr. Schenk instructed Plaintiff to "get off" narcotics because they were "long-term problems." (Tr. 303). There is no evidence  he treated with Dr. Schenk in 2005. Doc. 11.

Plaintiff underwent surgery with Dr. Schenk in March of 2006. (Tr. 307-15). Plaintiff reported improvement. (Tr. 294). In May of 2006, Dr. Schenk instructed Plaintiff to decrease his narcotic pain medication. (Tr. 292). In June of 2006, Dr. Schenk observed that Plaintiff "showed excellent motion, surprisingly better than I had expected." (Tr. 290). In September of 2006, Dr. Schenk noted that Plaintiff would not be able to return to work as a truck driver doing repetitive heavy lifting, and wrote "I would like to see him started on some vocational rehab." (Tr. 288). In December of 2006,

---

1 Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." See 20 C.F.R. §§ 404.130-134.

Plaintiff reported continued pain and was continuing to take Vicodin. (Tr. 286). Dr. Schenk "encouraged him to pursue the vocational rehab." (Tr. 286). In January of 2007, Dr. Schenk noted that Plaintiff was "frustrated he is not completely pain free, but I think it's unrealistic that he will ever become completely pain free." (Tr. 284). Dr. Schenk noted that Plaintiff might not get back to his prior level of activity, but "talked about [vocational rehabilitation] or some other gainful employment. Apparently he has a few things that he is considering and is going to be pursuing." (Tr. 284). In March of 2007, Dr. Schenk wrote:

> Patient is now about a year from his back surgery. He seems to be doing fair. He has ongoing back and left leg pain. He can sit for about four hours, stand for about one half hour, lift about 20 pounds. This has not changed or improved. His activities seem to be centered around the house. He takes his wife to work at 4 a.m. and then picks her up in the afternoon. He does not seem to have changed either activity or symptoms. There is no [vocational rehab] to my knowledge in Pennsylvania to try and get him back to work.

(Tr. 281). Dr. Schenk opined to the same work restrictions in July 2007. (Tr. 279).

Plaintiff treated with primary care physician Dr. Warren DeWitt, M.D., in 2004 and January of 2005. (Tr. 258-70). He was pursuing workers' compensation and requesting Vicodin and Percocet for back problems. (Tr. 269-70). There is no evidence in the record that Plaintiff treated with Dr. Dewitt in the remainder of 2005 or in 2006. Doc. 11. He treated with Dr. Dewitt on February 27, 2007; March 13, 2007; June 19, 2007; and July 20, 2007 for problems in his left leg. (Tr. 256-57). He treated with Dr. Dewitt on April 29, 2008 for a "pulled muscle" in his neck, in June of 2008 for an infection, in July

of 2008 for a sore throat and swollen glands, and in October of 2008 for problems with his left ankle. (Tr. 255, 355-56). Plaintiff treated with Dr. Dewitt in February of 2009 for vomiting, back pain, and "aches all over" and in December of 2009 for a "regular visit." (Tr. 357). Plaintiff reported continued back and neck pain in January, May and June of 2010. (Tr. 358-59). Dr. DeWitt's notes are handwritten and it is unclear whether they document objective abnormalities. (Tr. 255-70).

In May of 2008, cervical spine X-rays indicated "degenerative cervical spondylosis at C5-C6." (Tr. 215). In June of 2008, Plaintiff applied for benefits under the Act. (Tr. 117-18). On June 17, 2008, Dr. Schenk noted that Plaintiff began complaining of arm pain, which was "a major annoyance, but…tolerable." (Tr. 278). Dr. Schenk noted that he "had a long discussion with [Plaintiff] that he has to get off the Norco." (Tr. 278). He assessed Plaintiff to have "chronic back pain" and "drug use of Norco." (Tr. 278). The Bureau of Disability Determinations sent Dr. Schenk an RFC assessment in June of 2008, but no completed RFC assessment from Dr. Schenk appears in the record. (Tr. 274-77).

On June 25, 2008, Plaintiff completed a Function Report. (Tr. 140). He indicated that he cares for his wife, children, and animals, performs light household chores, makes simple meals, and rides on his lawn mower. (Tr. 139, 141). He reported that he naps during the day. (Tr. 139). He reported problems sleeping, dressing, and using the toilet. (Tr. 140). He indicated that he shopped in stores once a week for two to five hours. (Tr. 142). He indicated that he played instruments three times a week but that his left hand

"goes numb." (Tr. 143). He reported that he could lift up to twenty pounds, walk or stand for up to twenty minutes, and walk up to a quarter of a mile. (Tr. 144). He indicated that he does not use an assistive device to ambulate. (Tr. 145). He indicated that he had pain in his back, legs, left side of his neck, and left arm that is exacerbated by bending, standing, and walking. (Tr. 147). He reported that his medications cause sleepiness and dizziness. (Tr. 148).

On July 3, 2008, Plaintiff presented to Dr. Paul Buckthal, M.D. at the Spine Center for pain and numbness in his left neck, arm, and fingers. (Tr. 327). He reported these symptoms began in April of 2008. (Tr. 327). Plaintiff "denie[d] gait disturbance." (Tr. 327). Examination indicated:

> Numbness projects into all of his fingers without fixed paralysis. Range of motion of the neck is full as are the arms, elbows and wrists. The patient is able to walk on his heels and toes and do deep knee bends. Forward bending is limited by his previous lumbar surgery. Individual muscle strength testing, proximally and distally, in both arms and hand  is within normal limits. Biceps, triceps, pronator teres, and finger jerk reflexes are 1 to 2+ and symmetrical. Light touch is intact symmetrically throughout both arms and hands at this time. Radial pulses are intact. Knee and ankle jerks are 2+ and symmetrical. Toes are down.

(Tr. 328). Dr. Buckthal assessed Plaintiff to have "arthritic deterioration of the neck" with "no clear evidence of cervical myelopathy, radiculopathy or plexopathy." (Tr. 328). Dr. Buckthal ordered an MRI and an EMG nerve conduction study and instructed Plaintiff to follow-up with him after a six-week course of physical therapy. (Tr. 328). The state

agency sent Dr. Buckthal an RFC assessment, but the record contains no evidence he submitted one. (Tr. 322-25).

On August 12, 2008, Plaintiff underwent a consultative examination with state agency physician Dr. Shashank Bhatt, M.D. (Tr. 329). Plaintiff reported his left shoulder began hurting in April of 2008. (Tr. 329). He explained that "conservative management, including shots for the pain…were controlling the pain adequately, but until more recently, has gotten worse." (Tr. 329). Plaintiff is right handed. (Tr. 32, 330). On examination, Plaintiff's sensation was "grossly intact except for the left upper extremity, which showed lesser sensations for light touch," his strength and reflexes were normal, and he had "no gross abnormalities including atrophy" or bony abnormalities. (Tr. 331-32). Range of motion in his spine and knees was decreased. (Tr. 316-17).

On September 10, 2008, state agency physician Dr. Leo Potera, M.D.,  reviewed Plaintiff's file and authored a medical opinion. (Tr. 342). Dr. Potera opined that Plaintiff was not limited in his upper extremities, could perform light work, and could perform postural movements occasionally. (Tr. 339-42). Dr. Potera opined that Plaintiff's claims were "partially credible." (Tr. 344). Dr. Potera explained that Plaintiff "described daily activities that are not significantly limited in relation to his alleged symptoms" and did not need an assistive device to ambulate. (Tr. 343).  Dr. Potera cited Dr. Buckthal's normal examination findings and other findings of normal strength and reflexes. (Tr. 343).

On March 3, 2009, Plaintiff followed-up with Dr. Schenk. (Tr. 349). Plaintiff "had been in his usual state of health until Thursday when he bent over to pick up something off the floor. He had sudden onset of severe back spasms." (Tr. 349). X-rays indicated no abnormality. (Tr. 349). On examination, Plaintiff was "obvious[ly] [in a] great deal of discomfort. Any motion was excruciatingly painful." (Tr. 349). Dr. Schenk suspected an annular tear, scheduled an MRI, and prescribed pain medication. (Tr. 349). MRI indicated "status post fusion…No evidence of spondylolisthesis. Minor disc bulge contributing to mild canal stenosis and neural foraminal compromise." (Tr. 348).

On July 7, 2009, Plaintiff followed-up with Dr. Schenk. (Tr. 346). Plaintiff exhibited decreased range of motion, tenderness, and "a fair amount of discomfort." (Tr. 346). Dr. Schenk noted that Plaintiff was "applying for social security disability. I think this is probably appropriate." (Tr. 346). He noted that Plaintiff had "reached maximum medical improvement" and instructed Plaintiff to follow-up in a year. (Tr. 346).

On June 17, 2010, Dr. DeWitt completed an RFC questionnaire. (Tr. 350). He indicated that Plaintiff had lumbosacral degenerative disc disease and that his principal symptoms were severe low back pain and pain down both of his legs. (Tr. 350). He cited Plaintiff's MRI. (Tr. 350). He opined that pain was "constantly" severe enough to interfere with attention and concentration, Plaintiff could use his hands and feet "occasionally," and would be absent more than three times per month. (Tr. 352). He opined that Plaintiff could sit for a total of two hours in an eight-hour workday, but could

sit for zero minutes at a time; could stand for zero hours in an eight-hour workday and stand for zero minutes at a time; and could walk for one hour in an eight-hour workday and walk for zero minutes at a time. (Tr. 352). He opined that Plaintiff was capable of working "0" hours out of a forty-hour workweek. (Tr. 352). He opined that Plaintiff's pain was incapacitating, physical activity increased pain to the extent that medication or bed rest would be necessary, and that medication would "severely limit the patient's effectiveness in the workplace due to distraction, inattention, drowsiness, etc." (Tr. 353).

On July 20, 2010, Plaintiff appeared and testified at a hearing before the ALJ. (Tr. 22). Plaintiff testified that he could not work because back pain prevented him from sitting for "too long" and his medications made it difficult for him to focus. (Tr. 26, 35). He testified that his pain radiated to his knees and worsens when he stands. (Tr. 27). He testified that he had bars installed in the bathroom to help  him "get up and down off the seat." (Tr. 39). He testified that he prepares meals for himself, cares for his wife's dogs, and plays musical instruments. (Tr. 44). He testified that he drives his wife to and from her job, and naps in between. (Tr. 47-48). He testified that he could lift a gallon of milk and sit, stand or walk for fifteen minutes at a time. (Tr. 52). He testified that he did not have insurance. (Tr. 56).

In January of 2011, X-rays of Plaintiff's sacrum and coccyx indicated "mild subluxation at 1st and 2nd piece of coccyx. No recent fracture." (Tr. 622). In April of 2011, X-rays of Plaintiff's lumbar spine indicated "mildly narrowed" disc spaces at L4-

L5, L5-S1, T11-T12 and T12-L1. (Tr. 621). The "[r]est of the disc spaces, spinous processes and all pedicle appear[ed] normal." (Tr. 621). Plaintiff's fusion hardware was in place. (Tr. 621).

In May of 2011, Plaintiff was evaluated by Dr. Robert Mathews, M.D. (Tr. 591). He was taking Vicodin, methocarbamol, gabapentin, atenolol, allopurinol and indomethacin. (Tr. 591). On examination, Plaintiff had decreased range of motion, positive straight leg raise at best rest, decreased lower extremity strength, contractures, and tenderness. (Tr. 592-93). Plaintiff underwent a physical therapy evaluation. (Tr. 645). Notes indicate that "[w]ithin the last month and a half the patient has been complaining of severe pain in the left side of his back with severe burning sensation" and that his symptoms were "getting worse." (Tr. 645). Providers noted X-rays "reveal[ed] a sacral fracture which was partially subluxed." (Tr. 645). On examination, Plaintiff had kyphotic posture, loss of lumbar lordosis, decreased range of motion, decreased lower extremity strength, and bilaterally positive straight leg raise. (Tr. 645).

From November of 2011 to February of 2012, Plaintiff underwent physical therapy for back pain. (Tr. 625-39). Plaintiff "reported improvement in standing time from 10 minutes to 20 minutes. Improved walking time from 10 minutes to 15 minutes…improved sitting…time." (Tr. 640). Plaintiff's pain continued and he was discharged when he "plateaued." (Tr. 640).

On February 15, 2012, Plaintiff followed-up with Dr. Mathews. (Tr. 586). Dr. Mathews noted that one of Plaintiff's screws had "broken." (Tr. 586). Dr. Mathews noted, "suspect that the screw breakage will require intense therapy to that area to stabilize it as the surgeon in hand does not wish to have to take the screw out that is broken." (Tr. 588). In March of 2012, Plaintiff underwent three lumbar spine epidural injections. (Tr. 614-16). Subsequently, Dr. Mathews explained that the epidurals were "50% successful. His second problem with respect to his spine will be addressed at a later time…He will need to have reinforcing blocks to stop this type of facet pain." (Tr. 584).

In September of 2012, the District Court remanded the case to the ALJ because the ALJ erred by failing to include non-exertional limitations identified by Dr. Potera[2] in the RFC. *See Davern v. Astrue*, No. 4:11-CV-00961, 2012 WL 3903778, at *1 (M.D. Pa. Sept. 7, 2012).

On March 19, 2013, Dr. DeWitt authored another opinion. (Tr. 378-80, 582). He again cited Plaintiff's MRI, noted an X-ray from 2004, and indicated Plaintiff's symptoms were in his low back and legs. (Tr. 582). He opined Plaintiff would be off-task fifty percent of the time. (Tr. 582). He identified the same total limitations in sitting,

---

2 Dr. Potera opined that Plaintiff could only perform postural moves occasionally. (Tr. Tr. 339-42). The ALJ did not incorporate postural limitations in the second decision. (Tr. 393). However, the jobs identified by the VE do not require postural movements. *See* Dictionary of Occupation Titles §§915.473-010, 211.467-030, 205.367-054; (Tr. 397); *Hawk v. Colvin*, 1:14-CV-337, 2015 WL 1198087, at *20 (M.D. Pa. Mar. 16, 2015) (Failure to include kneeling limitation was harmless, where DOT provided that the position did not require kneeling) (internal citations omitted).

standing, and walking but indicated that Plaintiff could sit or walk for fifteen minutes at a time. (Tr. 582). He continued to opine that Plaintiff could stand for zero minutes at a time and could work zero hours out of a forty-hour workweek. (Tr. 581-82). On May 10, 2013, Dr. DeWitt clarified that the objective findings supporting his opinion were cervical spondylosis and surgery. (Tr. 381-82,   602). He explained that Plaintiff could only occasionally use his hands due to cervical radiculopathy. (Tr. 602).

On May 28, 2013, Plaintiff appeared and testified at a hearing before the ALJ. (Tr. 399). He testified that, prior to 2009, he could not stand for more than fifteen minutes because his legs would go numb. (Tr. 405). He testified that pain interfered with his sleep. (Tr. 406).

In September of 2013, a VE appeared and testified at a hearing before the ALJ. (Tr. 412). The VE testified that with Plaintiff's RFC for a range of light work, Plaintiff could perform "the work of a parking lot attendant, DOT code 915.473-010… [t]he job of a ticket seller, DOT code 211.467-030…[a]nd the job of interview survey worker, DOT code 205.367-054." (Tr. 416). The VE testified that if Plaintiff would be off-task more than ten percent of the time or absent more than once per month, there would be no work in the national economy that Plaintiff could perform. (Tr. 418). The VE testified that Plaintiff "would be able to choose whether [he] wanted to sit or stand" at two of these jobs. (Tr. 419).

On July 30, 2010, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 8-21). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2004, the alleged onset date, and was insured through December 31, 2009. (Tr.392). At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine was medically determinable and severe. (Tr. 392).  The ALJ found that Plaintiff's cervical spondylosis, high blood pressure, gout, obesity, history of infection, reported headaches, shoulder problems, and swelling/pain in his wrist, hands, and left ankle were medically determinable but non-severe. (Tr. 393). At step three, the ALJ found that Plaintiff did not meet or equal a Listing. (Tr. 393). The ALJ found that Plaintiff had the RFC to perform:

> [L]ess than the full range of light work as defined in 20 CFR 404.1567(b) in that he was able to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently, stand for 15 minutes at a time, walk for a quarter of a mile, sit for 4 hours at a time, occasionally bend at the waist, and work a forty hour workweek.

 (Tr. 393). At step four, the ALJ found that Plaintiff could not perform past relevant work. (Tr. 396). At step five, the ALJ found that Plaintiff could perform work in the national economy. (Tr. 397). Accordingly, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 397).

## VI.   Plaintiff Allegations of Error

### a.  Assignment of Weight to the Medical Opinions

The ALJ assigned "the greatest weight" to Dr. Schenk's 2007 opinions that Plaintiff could perform a range of light work, "less weight" to Dr. DeWitt's opinion that

Plaintiff could not perform even sedentary work, and "less weight" to Dr. Potera's opinion. (Tr. 395-96). The ALJ explained that:

> Dr. Schenk treated the claimant through his date last insured and has specialized experience in orthopedics (Exhibit 4F). Moreover, Dr. Schenk's March 2007 and July 2007 opinions are consistent with the claimant's x-rays, MRIs, electromyography, decreased range of motion of his lumbar spine, and reported abilities, including his reported ability to drive a car, look for work, do dishes, and barbeque (Exhibits 14B, 3F-5F, 7F, 10F, 12F).
>
> … Dr. Dewitt primarily relies on the claimant's medical imaging and subjective complaints of pain in coming to this conclusion (Exhibit 16F). Dr. Dewitt's treatment records do not indicate that the claimant has difficulties walking, standing, sitting, or using his extremities during exams (Exhibits 3F, 12F). His conclusion that the claimant cannot lift more than 10 pounds is inconsistent with the claimant's statement that he could lift about 20 pounds (Exhibit 3E). His conclusion that the claimant cannot stand at all is inconsistent with the claimant's testimony that he could stand/walk for about 10 minutes and previous statements that he could walk a quarter of a mile, shower, load a dishwasher, use a barbeque, sweep the floor, fill his lawnmower with gas, and shop for 2-5 hours at a time (Exhibits 14B, 3E; Hearing Testimony). His conclusion that the claimant cannot sit for more than 15 minutes without interruption is inconsistent with the claimant's ability to drive his wife to work on a regular basis and mow his lawn (Exhibits 14B, 3E). Moreover, Dr. Dewitt's opinions are inconsistent with the other above discussed opinions.

(Tr. 396).

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Opinions can come from various sources, including treating physicians,

examining physicians, and non-examining physicians. 20 C.F.R. §§ 404.1527(c)(1)-(2). "Regardless of its source, [the Commissioner] will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). If a treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

When the Commissioner does not give a treating "opinion controlling weight under paragraph (c)(2) of this section, [the Commissioner] consider[s] all of the" factors in 20 C.F.R. §404.1527(c). Section 404.1527(c)(2)(i) provides that, "the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." *Id*. Section 404.1527(c)(2)(ii) provides that "more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories." *Id.* Section 404.1527(c)(1) provides that, "[g]enerally, [the Commissioner] give[s] more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." *Id.*

Pursuant to 20 C.F.R. §404.1527(c)(3), "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory

findings, the more weight we will give that opinion" and "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion." Pursuant to 20 C.F.R. §404.1527(c)(4), "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." Pursuant to 20 C.F.R. §404.1527(c)(5), more weight may be assigned to specialists, and 20 C.F.R. §404.1527(c)(6) allows consideration of other factors which "tend to support or contradict the opinion."

Plaintiff asserts that the ALJ erred in crediting Dr. Schenk's 2007 opinions because his condition "clearly worsened" after 2007, citing Dr. Schenk's March and July 2009 treatment records. (Pl. Brief at 9-10). For the same reason, Plaintiff asserts that the ALJ erred in finding that Dr. Dewitt's opinion that Plaintiff could not lift more than ten pounds was inconsistent with Plaintiff's June 2008 report that he could lift twenty pounds, because this was before his worsening. (Pl. Brief at 9). Defendant responds that this worsening was only a "temporary increase in symptoms in March 2009 when he bent over to pick something up…an isolated incident that does not undermine the overall trend that showed improvement and a stable back." (Def. Brief at 16).

Plaintiff cites to two medical records from March and July of 2009 indicating a sudden onset of lumbar spine back spasms and possible annular tear. However, the only other evidence of treatment prior to December 31, 2009 was a "routine visit" with his Dr. DeWitt in December of 2009. *Supra.* The only records of treatment in 2010 are three visits with Dr. DeWitt. *Supra.* In contrast, in 2011, he reported a worsening of symptoms,

X-rays indicated that a screw from Plaintiff's surgery had broken, and Plaintiff treated with specialists, underwent physical therapy, and had a series of epidural steroid injections. *Supra.* This suggests that if Plaintiff's condition did worsen to the extent that the ALJ could not rely on the opinions from 2007 or 2008, the worsening did not occur before December 31, 2009. *Supra.* The March and July 2009 records identified by Plaintiff fail to demonstrate that no reasonable person would find the relevant evidence as adequate to deny benefits.

Plaintiff asserts that the ALJ "failed to consider" various factors identified in 20 C.F.R. §404.1527. (Pl. Brief at 9). ). The Regulations require the ALJ to "consider" each factor in assigning weight to the medical opinions. 20 C.F.R. §404.1527(c). However, "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." SSR 06-3p; *see also Phillips v. Barnhart*, 91 Fed.Appx. 775, 780 (3d Cir. 2004) ("the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it") (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998)); *Francis v. Comm'r Soc. Sec. Admin.*, 414 Fed.Appx. 802, 804-05 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include "good reasons ... for the weight ... give[n] [to the] treating source's opinion"—not an exhaustive factor-by-factor analysis…Procedurally, the regulations require no more") (internal citations omitted). If explanation allows meaningful judicial review, it suffices. *See*

*Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) (Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned"); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis" and instead must only "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review"); *Hur v. Comm'r Soc Sec.*, 94 F. App'x130, 133(3d Cir. 2004) ("There is no requirement that the ALJ discuss in its  opinion every tidbit of evidence included in the record"). Here, the ALJ's explanation sufficed for meaningful review. Thus, the Court finds no merit to this allegation of error.

Plaintiff asserts that the ALJ was not entitled to assign less weight to Dr. Dewitt's opinion for being based on subjective, rather than objective, evidence, because "[o]bviously these are factors that the treating physician should appropriately consider." (Pl. Brief at 9). Plaintiff cites no authority for this premise. (Pl. Brief at 9). When a physician's opinion is based on subjective, rather than objective, information, and the ALJ has properly found a claimant's subjective claims to be less than fully credible, an ALJ may assign less weight to the opinion:

> [T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion. *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir.1996). An ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms and limitations when the claimant's complaints are properly discounted. *Fair v. Bowen*, 885 F.2d 597, 605 (9th

Cir.1989) ("The ALJ thus disregarded Dr. Bliss' opinion because it was premised on Fair's own subjective complaints, which the ALJ had already properly discounted. This constitutes a specific, legitimate reason for rejecting the opinion of a treating physician.").

*Morris v. Barnhart*, 78 Fed.Appx. 820, 824-25 (3d Cir. 2003). Plaintiff does not challenge the ALJ's credibility finding. (Pl. Brief). Thus, the Court finds no merit to this allegation of error.

Plaintiff asserts that the ALJ erred in criticizing Dr. DeWitt's opinion regarding Plaintiff's ability to stand. (Pl. Brief at 10). Dr. DeWitt opined that Plaintiff could stand for "zero minutes." (Tr. 352, 581-82). Dr. DeWitt's opinion was extreme, which makes it less credible. *See Varano v. Colvin*, No. 3:14-CV-001467-GBC, 2015 WL 5923615, at *9 (M.D. Pa. Oct. 9, 2015) (ALJ properly rejected physician who "opined to extreme limitations, such as a complete inability to use her hands, fingers, or arms, twist, stoop, crouch, and climb, sit for more than ten minutes, and stand for more than fifteen minutes"); *Oncay v. Colvin*, No. 1:13-CV-02082-GBC, 2014 WL 4796368, at *14 (M.D. Pa. Sept. 26, 2014) ("[T]he ALJ properly concluded that [physician's] extreme opinion was inconsistent with his treatment notes and was based largely on Plaintiff's subjective symptoms, which were less than credible."); 20 C.F.R. §404.1527(c)(6) (ALJ may consider other factors that make a medical opinion more or less credible). Thus, the Court finds no merit to this allegation of error.

Plaintiff notes that Dr. Schenk opined that it was "probably appropriate" for Plaintiff to apply for benefits under the Act. (Pl. Brief at 10). However, this indefinite

statement does not rise to the level of a medical opinion. Dr. Schenk had the opportunity to submit a medical opinion, as the Bureau of Disability Determinations sent Dr. Schenk an RFC assessment in June of 2008, but no completed RFC assessment from Dr. Schenk appears in the record. (Tr. 274-77). Plaintiff does not address the ALJ's assessment of Dr. Schenk as a specialist. (Tr. 396).

Plaintiff has not identified any reason why the ALJ was not entitled to resolve the conflict in medical opinions in favor of Dr. Schenk and Dr. Potera. Dr. Schenk was an orthopedic surgeon, a specialist, with a longitudinal treatment relationship throughout the relevant period. *Supra.* The multiple consistent opinions by Dr. Schenk and Dr. Potera provide substantial evidence for the ALJ's RFC assessment. *See Jones v. Sullivan*, 954 F.2d 125 (3d Cir. 1991); *Plummer*, 186 F.3d at 429; *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir.2011). Thus, the Court finds no merit to this allegation of error.

### b.  Step two

Plaintiff asserts that the ALJ erred in failing to find his "neck impairment" to be severe and that it caused neck pain, arm pain, and decreased sensation in his left arm. (Pl. Brief at 11-12). Defendant responds that the ALJ properly found that Plaintiff's neck impairment was not severe because of a lack of objective evidence and that Plaintiff has failed to establish any error was harmful because Plaintiff did not identify additional limitations. (Def. Brief at 24). Plaintiff did not reply.

At step two, the ALJ first considers whether there are any medically determinable impairments and then determines whether any of the medically determinable impairments are "severe." 20 C.F.R. § 404.1529.  An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. Id.  § 404.1521.   Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, seeing, hearing, speaking, and remembering.  Id.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual ability to work.  Id.  § 416.921; Social Security Rulings 85-28, 96-3p and 96-4p.

Determining whether a claimant has any medically determinable, severe impairments is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g).  Non-severe impairments are considered at subsequent steps, while non-medically determinable impairments are not considered at subsequent steps. 20 C.F.R. §§ 416.908, 416.923; *see also Rutherford v. Barnhart*, 399 F.3d 546, 554, n.7 (3d Cir. 2005) (to be considered, an impairment must be medically determinable, but need not be "severe"). 20 C.F.R. § 404.1520(d)-(g). Thus, when the ALJ finds an impairment to medically determinable, but non-severe, the error will be harmless unless the claimant identifies an error in assessing the impairment at subsequent steps. *See  Rutherford v. Barnhart*, 399 F.3d 546, 552-53

(3d Cir. 2005) (Remand is not appropriate where ALJ's error does not affect the ultimate outcome); 28 U.S.C.A. § 2111 ("[T]he court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.").

Here, Plaintiff has failed to demonstrate how an alleged error at step two impacted later steps. Dr. DeWitt's opinion indicated additional limitations, but, as discussed above, the ALJ properly assigned Dr. DeWitt's opinion less weight. *Supra.* The multiple consistent opinions by Dr. Schenk and Dr. Potera provide substantial evidence for the ALJ's RFC assessment. *See Jones v. Sullivan*, 954 F.2d 125 (3d Cir. 1991); *Plummer*, 186 F.3d at 429; *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir.2011)). Neither opined to any additional upper extremity limitation. (Tr. 279, 281, 339-42). Consequently, the Court does not find that remand is appropriate to correct this error and does not recommend remand on these grounds. *See Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005).

## VII.    Conclusion

The Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is a deferential

standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." J*esurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Here, a reasonable mind might accept the relevant evidence as adequate.    Accordingly, it is HEREBY RECOMMENDED:

I.      This appeal be DENIED, as the ALJ's decision is supported by substantial evidence; and

II.     The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where

required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.


Dated: January 20, 2016                    _____s/Gerald B. Cohn_____
                                           GERALD B. COHN
                                           UNITED STATES MAGISTRATE JUDGE